UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YUNIOR DOMINGUEZ, *et al.*,

        Plaintiffs,

v.                                 Case No. 8:20-cv-1538-KKM-AEP

BARRACUDA TACKLE LLC, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiffs Yunior Dominguez ("Dominguez") and Salt Addict, Inc. d/b/a The BallyHoop ("BallyHoop") (collectively, "Plaintiffs") brought this action alleging a claim for patent infringement against Defendants Barracuda Tackle LLC; Florida Fishing Tackle MFG.CO., Inc. (together with Barracuda Tackle LLC, "Barracuda"); and David Burton Young ("Young") (collectively, "Defendants") relating to U.S. Patent No. 10,165,764 ("the '764 Patent") (Doc. 1). Plaintiffs allege that a collapsible bait net produced, marketed, and sold by Defendants infringes Plaintiffs' patented collapsible bait net directly or indirectly, either literally or under the doctrine of equivalents, as to Claims 1 and 3.[1] Currently before the Court are Defendants' Motion for Summary Judgment, Defendants' Motion for Sanctions

---

[1] In the Complaint, Plaintiffs allege that Defendants infringed and continue to infringe at least Claims 1, 2, and 3 of the '764 Patent (Doc. 1, ¶21). Plaintiffs clarify in their supplemental response to Defendants' Motion for Summary Judgment that they seek only to assert claims of direct and indirect infringement on Claims 1 and 3 (Doc. 57, at 2).

Pursuant to Federal Rule of Civil Procedure 11, the respective responses and replies thereto, and the parties' supplemental briefs (Docs. 19, 28, 34, 35, 57, 61, 64).  By the motions, Defendants seek summary judgment on Plaintiffs' claim for infringement and an award of sanctions against Plaintiffs for bringing a purportedly frivolous claim in this action.  After consideration, and for the reasons set forth below, it is recommended that Defendants' Motion for Summary Judgment (Doc. 28) be granted and that Defendants' Motion for Sanctions (Doc. 19) be denied.[2]

## I.      Background

Dominguez developed a collapsible bait net, called the Hoop Net, to address storage and transportation issues with non-collapsible bait nets in the fishing industry and, in February 2017, submitted a patent application to the United States Patent and Trademark Office ("USPTO") for his collapsible bait net (*see* Doc. 34-2, Sworn Declaration of Yunior Dominguez ("Dominguez Decl."), ¶¶5-6).  According to Dominguez, during the pendency of his patent application, Dominguez showcased his collapsible bait net at trade shows (Dominguez Decl., ¶6). Approximately a year later, Plaintiffs learned that Barracuda purchased one of Plaintiffs' collapsible bait nets and began selling a collapsible bait net called the Barracuda Hoop Net (the "Accused Product") (Dominguez Decl., ¶9).  Plaintiffs believed that the Accused Product was configured in the same manner, with the

---

[2]  Originally, United States District Judge Steven D. Merryday referred the motions to the undersigned for issuance of a Report and Recommendation (Doc. 52).  Following her confirmation, the case was reassigned to United States District Judge Kathryn Kimball Mizelle ("Judge Mizelle"), and the motions remain referred.

same essential features as their collapsible bait net (Dominguez Decl., ¶10). Dominguez also received information and comments from customers and from authorized distributors and wholesalers of Plaintiffs' collapsible bait net inquiring as to whether BallyHoop had any relation to the Accused Product (Dominguez Decl., ¶14). Consequently, Plaintiffs directed a cease-and-desist letter to Defendants in March 2018 and several notices to bait and tackle shops confirmed to be selling or distributing the Accused Product (Dominguez Decl., ¶¶12-13 & Ex. A & B).

Subsequently, on January 1, 2019, the USPTO issued the '764 Patent to Dominguez for the Hoop Net shown below:



(Doc. 1, Ex. A). The '764 Patent sets forth the following claims:

1. A bait net comprising:
a.    two semicircular tubular rods, each having a hollow first end and a second end with a pin-like insert attached thereto, and the two semicircular rods are connected together at each end to

form a ring by means of the pin-like insert of the second end is inserted into the hollow first end for a secure fit at two points of connection; and

b.    a net made of mesh which at its top portion has the same diameter as the ring formed by the two semicircular tubular rods, and at its bottom portion extends into a conical shaped enclosed receptacle, forming a hoop; and

c.    the net is attached to the ring formed by the two semicircular tubular rods by means of: being interwoven about the circumference of the ring; and having two U shaped cords, with one about each point of connection of the ring; and each U shaped cord is fastened to the ring by a fastening means and is held in place about each point of connection by wax string that is wrapped around the tubular rod and creates a barrier to the movement of the U shaped cords and the net; and

d.    four stabilizing cords, each separately attached to the ring by a fastening means and positioned equidistant from each other about the ring, and which cords converge at the center of the ring and net assembly; and

e.    a draw cord that is attached to the four stabilizing cords at their point of convergence by a fastening means.

**2.**    The bait net in claim **1** whereby the two semicircular tubular rods are made of aluminum and the net, the U shaped cords, the stabilizing cords, and the draw cord are made of monofilament.

**3.**    The bait net in claim **1** whereby the bait net is collapsible by means of the two semicircular tubular rods are disconnected and folded in half for storage and portability.

**4.**    The bait net in claim **1** whereby there are four rods connected together to form the ring and is collapsible by means of disconnecting the four rods and arranging them for storage and portability.

**5.**    A bait net comprising:

a.    a single tubular rod, having a hollow first end and a second end with a pin-like insert attached thereto, and the two ends are connected to form a ring by means of: the pin-like insert of the second end is inserted into the hollow first end for a secure fit at one point of connection; and

b.    a net made of mesh which at its top portion has the same diameter as the ring formed by the single tubular rod, and at its bottom portion extends into a conical shaped enclosed receptacle, forming a hoop; and

c.    the net is attached to the ring formed by the single tubular rod by means of: being interwoven about the circumference of the ring; and having two U shaped cords symmetrically positioned on opposite sides of the ring; and each U shaped cord is fastened

4

to the ring by a fastening means and is held in place by wax string that is wrapped around the tubular rod and creates a barrier to the movement of the U shaped cords and the net; and

d.  four stabilizing cords, each separately attached to the ring by a fastening means and positioned equidistant from each other about the ring, and which cords converge at the center of the ring and net assembly; and

e.  a draw cord that is attached to the four stabilizing cords at their point of convergence by a fastening means; and

f.  the ring and net assembly is not collapsible.

(Doc. 1, Ex. A, at 11, col. 5-6).  Additionally, the '764 Patent discusses equivalents, indicating that "[t]hose skilled in the art will recognize, or be able to ascertain using no more than routine experimentation, many equivalents to the specific embodiments of the invention described herein" and that "[s]uch equivalents are intended to be encompassed by the claims" (Doc. 1, Ex. A, at 11, col. 5).

On the same day as the issuance of the '764 Patent, Dominguez directed a second cease-and-desist letter to Defendants (Dominguez Decl., ¶12 & Ex. A).  In the January 2019 letter, Plaintiffs requested that Defendants cease marketing and selling their collapsible bait net and provide information to Plaintiffs regarding the marketing and sales of their collapsible bait net (Dominguez Decl., Ex. A).  Plaintiffs informed Defendants that, if they ceased marketing and selling the collapsible bait net and provided the requested information, Plaintiff would make best efforts to resolve the matter without litigation, but, if Defendants failed to respond or comply within the time allotted, Plaintiffs would deem such failure as a deliberate refusal to resolve the matter without litigation and an intention to continue infringement of the '764 Patent (Dominguez Decl., Ex. A).

Given the continuation of purportedly infringing activity following the January 2019 cease-and-desist letter, Plaintiffs initiated this lawsuit in the Southern District of Florida ("Southern District"), setting forth a single claim for patent infringement (Doc. 1). While the case remained pending in the Southern District, Defendants submitted (1) a Motion to Dismiss (Doc. 15), arguing that Plaintiffs failed to state a claim for which relief could be granted and that the Southern District constituted an improper venue; (2) a Motion for Sanctions (Doc. 19), seeking an award of sanctions against Plaintiffs pursuant to Rule 11, Federal Rules of Civil Procedure, for filing a purportedly frivolous lawsuit; and (3) a Motion for Summary Judgment (Doc. 28), arguing that judgment should be entered in their favor since Plaintiffs failed to demonstrate literal infringement or infringement under the doctrine of equivalents. Plaintiffs responded in opposition only to the Motion to Dismiss and to the Motion for Summary Judgment (Docs. 18 & 34). Defendants also submitted their *Markman* motion[3] setting forth their proposed claims construction of the '764 Patent (Doc. 36), to which Plaintiffs did not respond. Upon consideration of the Motion to Dismiss, the District Judge in the Southern District denied the motion to the extent that the entire case was ordered to be transferred to the Middle District of Florida ("Middle District") (Doc. 38).

Following transfer to the Middle District, the remainder of Defendants' Motion to Dismiss, as well as Defendants' Motion for Sanctions, Defendants'

---

[3] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

Motion for Summary Judgment, and Defendants' *Markman* motion, remained pending.   In addition, Plaintiffs submitted a Motion for Extension of Discovery Deadlines (Doc. 48), arguing that an extension was warranted given the late ruling on the Motion to Dismiss, the transfer of the case to the Middle District, the filing of a continuation application on the '764 Patent, and the addition of co-counsel. Defendants opposed such request (Doc. 49).   After a hearing, the undersigned denied Defendants' Motion to Dismiss as moot (Doc. 55), given the parties' agreement that the case could proceed on the pending Motion for Summary Judgment, and denied Plaintiffs' Motion for Extension of Discovery Deadlines (Doc. 56), given that discovery closed prior to transfer to the Middle District.   In lieu of an extension, the undersigned provided Plaintiffs 20 days to supplement the record and Defendants 14 days thereafter to respond.

Notwithstanding, Plaintiffs failed to respond to Defendants' *Markman* motion or otherwise offer their own proposed claims construction of the '764 Patent.   Indeed, despite receiving a second opportunity to submit a response to Defendants' *Markman* motion, Plaintiffs again failed to timely respond and, instead, submitted an out-of-time response (Doc. 59), which they later withdrew as untimely (Doc. 60).   As a result, Judge Mizelle considered Defendants' *Markman* motion unopposed and adopted Defendants' claims construction, as detailed below (Doc. 66).[4]

---

[4]  Notably, in addition to adopting Defendants' claims construction, Judge Mizelle also declared that, to the extent that Plaintiffs put forth claims-construction arguments in their responses to Defendants' Motion for Sanctions and Motion for Summary Judgment, such

As indicated, prior to receiving a ruling on the *Markman* motion, Defendants submitted their Motion for Summary Judgment (Doc. 28), currently pending before the Court.   By the motion, Defendants argue that the Accused Product does not infringe the '764 Patent, either directly or indirectly, under a theory of literal infringement or under the doctrine of equivalents.   Primarily, Defendants contend that, construing Claims 1 and 3 properly, the Accused Product does not infringe the '764 Patent directly or indirectly as it does not contain tubular rods pre-formed in a semicircular shape, a pin-like insert or hollowed end for insertion of the pin-like insert, or wax string that encircles the tubular rod to create a barrier to movement of the cords and the net or for any other purpose.   Defendants further contend that the doctrine-of-equivalents argument fails as a matter of law because Plaintiffs never provided a legal or factual basis for such argument, except a conclusory statement that the Accused Product changes only minor or insubstantial details of the claimed invention while retaining the same functionality, *i.e.*, forms a single ring/hoop with netting that functions to capture bait in the fishing industry.

In response, Plaintiffs argue that summary judgment is not warranted (Doc. 34).   Plaintiffs assert that, although the Accused Product is not an exact copy of Plaintiffs' collapsible bait net claimed in the '764 Patent, the Accused Product consists of immaterial or nonessential changes intended to circumvent the claim language of the '764 Patent, including as to the semicircular rods, the insertion point

---

arguments need not be considered because Plaintiffs should have included those arguments in a timely *Markman* motion, yet Plaintiffs failed to do so (Doc. 66, at 3 n.2).

of the rods, and the mechanism for insertion.[5]  Plaintiffs state that inspection of the Accused Product revealed that it consisted of (1) two tubular rods forming semicircles to connect to each other by a hollowed cylinder-shaped coupler to form a ring/hoop; (2) a net made of mesh attached to the ring/hoop; (3) four stabilizing cords; and (4) a draw cord attached to the four stabilizing cords (Dominguez Decl., ¶10).[6]  Given Dominguez's inspection of the Accused Product, Plaintiffs contend that the Accused Product is configured in the same manner with the same essential features of the claimed collapsible bait net in the '764 Patent (Dominguez Decl., ¶11).  Plaintiffs therefore assert that application of the doctrine of equivalents is warranted because the Accused Product performs substantially the same way to achieve the same result – namely, two tubular rods forming a semicircle to connect to each other by means of a pin-insertion mechanism, wherein a solid end inserts into a hollow end, to form a ring that is collapsible.  According to Plaintiffs, the noncritical changes made by Defendants to the Accused Product do not remove it from the scope of the claims of the '764 Patent.

Defendants submitted a reply brief (Doc. 35).  Essentially, Defendants challenge all of Plaintiffs' arguments set forth in their response, asserting that Plaintiffs did not dispute the fact that the Accused Product lacks several limitations in the '764 Patent and, with respect to the doctrine of equivalents, Plaintiffs failed

---

[5]  Plaintiffs echoed this position throughout their answers to Defendants' Interrogatories (Doc. 28, Ex. C).

[6]  The undersigned does not consider Dominguez's inspection as expert testimony on the issue, as no expert was identified by Plaintiffs in this matter.  In fact, no expert opinions appear in the record for either side.

to explain how the Accused Product can perform the same function in substantially the same way to achieve the same result as Plaintiffs' collapsible bait without such limitations.   Defendants argue that Plaintiffs merely rely upon general and conclusory allegations that Defendants are making, marketing, and selling a collapsible bait net with all the essential features and elements of the collapsible bait net claimed in the '764 Patent rather than providing any factual or legal basis for such allegations.   Defendants take issue with Plaintiffs' repeated assertions that immaterial or nonessential changes are sufficient to support a finding of patent infringement, as Defendants contend that a finding of infringement requires that an accused device must practice each limitation of the claim, either literally or by an equivalent, and find unavailing Plaintiffs' dismissal of the differences or ignorance of such differences in setting forth their arguments.   Defendants also argue that Plaintiffs miss the mark by applying the doctrine of equivalents to the Accused Product as a whole rather than as to each individual element of the claims.

Subsequently, pursuant to the undersigned's directive during the hearing, the parties provided supplemental briefing (Docs. 57 & 64).  In their supplemental brief, Plaintiffs again argue that the Accused Product infringes the '764 Patent, directly and indirectly, under a theory of literal infringement and the doctrine of equivalents (Doc. 57).   More precisely, Plaintiffs contend that, correctly reading the term "semicircular" to mean "shaped like a half-circle'" would allow any reasonable jury to conclude that the Accused Product's rods practice the limitation of Claim 1, and thus directly infringe Claim 1, because the rods are shaped as semicircles when the

Accused Product is assembled to form a ring. Plaintiff posits that a reasonable jury could also find that, although the Accused Product may not literally infringe portions of element (a) and (c) of Claim 1, the Accused Product both practices the limitation of the connection of the rods by means of a pin-like insert into a hollow end and practices the limitation of the wax string's formation of a barrier to impede the movement of the U-shaped cords under the doctrine of equivalents. With respect to direct infringement of Claim 3, Plaintiffs argue that, because Defendants premise the lack of infringement of Claim 3, the dependent claim, solely upon the lack of infringement of Claim 1, the independent claim, summary judgment is not warranted, as the Accused Product infringes Claim 1. Likewise, Plaintiffs contend that, because Defendants claim that the theory of indirect infringement fails solely because direct infringement is a requisite element of indirect infringement, summary judgment is not warranted on the issue of indirect infringement, as the Accused Product directly infringes the '764 Patent. Given the purported existence of genuine questions of material fact regarding whether the Accused Product practices several elements of the '764 Patent, including whether the Accused Product's two tubular rods are semicircular, whether the Accused Product has an equivalent to the hollow first end and a second end with a pin-like insert, and whether the Accused Product has an equivalent to the wax string wrapping that creates a barrier to movement of the U-shaped cords, Plaintiffs contend that summary judgment is precluded.

In turn, Defendants contend that Plaintiffs' supplemental briefing still fails to establish a genuine issue of material fact or to demonstrate that Plaintiffs'

infringement claims are supported as a matter of law (Doc. 64). Defendants further argue that Plaintiffs improperly seek to advance claims-construction arguments that should have been presented in response to Defendants' *Markman* motion but were not. Additionally, Defendants challenge the admissibility of the evidence provided by Plaintiffs in support of their supplemental brief, including conclusory statements made by Dominguez in his declaration and the unauthenticated photographs attached thereto, which Plaintiffs never provided to Defendants and which contradict the admissions by Plaintiffs regarding the lack of any pictures or images depicting the Accused Product.

In addition to seeking summary judgment on Plaintiffs' claims, Defendants move for sanctions against Plaintiff (Doc. 19). Defendants assert that sanctions are warranted pursuant to Rule 11 due to Plaintiff's failure to conduct an adequate pre-filing investigation before initiating litigation for patent infringement and for otherwise filing a meritless lawsuit. Mainly, Defendants contend that no factual basis exists for the assertions in Plaintiffs' pre-suit communications or the Complaint, the literal infringement claim and claim under the doctrine of equivalents are objectively frivolous, and Plaintiffs should have known that their claims were frivolous. Plaintiffs initially responded in opposition (Doc. 58) and then submitted an amended response in opposition (Doc. 61) but later withdrew their responses "until such time as leave is granted by the Court to file same[,]" as the responses were submitted more than a year after the motion was filed (Doc. 63). Plaintiffs never subsequently sought leave to submit a response, however.

Notwithstanding, Plaintiffs effectively contend that their pre-suit inquiry was sufficient and that an objectively reasonable basis exists for their claim of patent infringement.

## II.      Motion for Summary Judgment

### i.        Standard of Review

Summary judgment is appropriate where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original).  The substantive law applicable to the claims will identify which facts are material.  *Id.* at 248.  In reviewing the motion, courts must view the evidence and make all factual inferences in a light most favorable to the nonmoving party and resolve all reasonable doubts about the facts in favor of the nonmovant. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 483 F.3d 1265, 1268 (11th Cir. 2007) (citation omitted).

In a patent infringement case, the court should grant summary judgment "when it is apparent that only one conclusion as to infringement could be reached

by a reasonable jury." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) (citation omitted). "Summary judgment of noninfringement is also appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *Id.* (citation omitted). The analysis for patent infringement involves two steps: (1) claim construction; and (2) application of the properly construed claim to the accused product. *Id.* (citations omitted). While claim construction is a matter of law, whether the accused device contains an element corresponding to each claim limitation or its equivalent is a question of fact. *Id.* at 1369-70.

"To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Id.* at 1371 (citation omitted). Likewise, though equivalence is a factual matter normally reserved for a factfinder, a district court should grant summary judgment where no reasonable factfinder could find equivalence. *Id.* (citation omitted). Notably, a party may not overcome a grant of summary judgment by simply offering conclusory statements. *Id.* (citation omitted). Rather, a "party opposing a motion for summary of noninfringement must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant[,]" with mere denials or conclusory statements deemed insufficient. *Id.* at 1372 (citations omitted).

**ii.    Discussion**

**a.    Claims Construction**

As indicated, Defendants submitted their proposed claims construction in a *Markman* motion (Doc. 36), while Plaintiffs failed to timely submit any proposed claims construction, despite more than one opportunity to do so.  Consequently, given the lack of opposition and the reasonable interpretations of the patent at issue, Judge Mizelle adopted Defendants' proposed claims construction and indicated that the claims would be construed consistent with Defendants' *Markman* motion (Doc. 66).  As Plaintiffs clarified that they seek to pursue their infringement claim only as to Claim 1, an independent claim, and Claim 3, a dependent claim, the relevant terms and limitation are construed as set forth below.

**1.    Semicircular tubular rods**

The term "semicircular tubular rods" is construed as tube-shaped rods pre-formed into the shape of half of a circle (Doc. 36, at 9).

**2.    Hollow**

The term "hollow" is construed as having a hole or empty space inside (Doc. 36, at 10).

**3.    Pin-like insert**

The term "pin-like insert" is construed as a slender component operably configured to be inserted into the hole of a hollow end of a tube (Doc. 36, at 11).

**4.    Wax string that is wrapped around the tubular rod and creates a barrier to the movement of the U-shaped cords and the net**

This limitation "wax string that is wrapped around the tubular rod and creates a barrier to the movement of the U-shaped cords and the net" is construed as a string made of wax encircling the tubular rod at a position and height to prevent movement of the U-shaped cords and the net (Doc. 36, at 12).

### b.   Infringement

Having determined the correct scope of the claims, the inquiry turns to a comparison of the properly construed claims to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent. *TechSearch, L.L.C.*, 286 F.3d at 1371 (citation omitted). Importantly, infringement must be demonstrated literally or equivalently for each limitation. *Id.* at 1372; *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004) ("To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents.").

### 1.   Literal Infringement

"To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *TechSearch, L.L.C.*, 286 F.3d at 1371 (citation omitted). To put a finer point on it, "'[t]o establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.'" *Duncan Parking Techs., Inc. v. IPS Group, Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). Based on the construction of the claims, the Accused

Product does not literally infringe the '764 Patent, directly or indirectly, because several limitations set forth in Claim 1 and, as a result, Claim 3, are not found in the Accused Product.[7]  In fact, in Plaintiffs' supplemental brief, Plaintiffs effectively concede that the Accused Product does not literally infringe the '764 Patent (*see, e.g.,* Doc. 57, at 8 ("But although the Accused Product may not literally infringe that portion of element (a), the Accused Product does infringe it under the Doctrine of Equivalents."); Doc. 57, at 10-11 ("Although the rods of the Accused Product lack the exact pin-like insert and hollow end described in the patent, the Accused Product's unmodified first end and attached hollow coupler perform the same function in substantially the same way to achieve the same result as the claimed invention."); Doc. 57, at 12 ("For its part, the Accused Product does not have wax string wrapping; instead, the Accused Product creates a barrier to the movement of its U[-]shaped cords and the net by having the connecting loops of the U[-]shaped

---

[7] In the motion, Defendants indicate that Plaintiffs never responded to Defendants' Second Request for Admissions, which Plaintiffs do not dispute, and thus several facts have been deemed admitted (Doc. 28-1, ¶12 & Ex. B).  Indeed, Rule 36, Federal Rules of Procedure, provides that when a party serves written requests for admission upon the opposing party, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P. 36(a)(3); *see also Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1264 (11th Cir. 2002) (stating that the failure to respond within thirty days to a request for admission issued under Rule 36 would deem the matter admitted).  Given the failure to respond to Defendants' Second Request for Admissions, Plaintiffs have admitted, among other things, that the Accused Product does not include a pin-like insert at the end, does not include a tubular rod having a hollow first end, includes a connector using a hollowed cylinder-shaped coupler, includes straight rods, and does not include wax string wrapped around the rods and that Plaintiffs do not possess any physical samples, pictures, or other images of the Accused Product depicting otherwise (Doc. 28-1, Ex. B).

cords sit in grooves cut into the rods at approximately the same location as where the wax string wrapping is located on the claimed invention.'"))

First, as Defendants assert, the Accused Product forms a different shape than that claimed by Plaintiffs prior to assembly.  Namely, the Accused Product includes pre-formed, flexible rods that are long and straight with the ability to bend without breaking, while Claim 1 encompasses collapsible bait nets with tubular rods that are pre-formed in a semicircular shape (Doc. 28, at 6; Doc. 28-2, Sworn Declaration of David Burton Young ("Young Decl."), Ex. A, at 3; Doc. 36, at 9).

**Plaintiffs' Semicircular Rods:**



FIG 4

**Accused Product:**



(Doc. 28, at 6).  Given the claims construction, the Accused Product does not practice element (a) of Claim 1, and thus Claim 3, pertaining to the semicircular tubular rods, as it does not contain tube-shaped rods pre-formed into the shape of a half circle.

Next, the connection and lock mechanisms on the two nets differ.  Plaintiffs' collapsible bait net attaches and locks using a pin-like insert on the first end of each rod, which is inserted into a hollow opening and crimped and connected by inserting the first end with the pin-like insert into the other hollowed-out end.  As construed, the pin-like insert is a slender component operably configured to be inserted into the hole of a hollow end of a tube (Doc. 36, at 11).  Notably, the '764 Patent explicitly indicates that "a key feature of this design is that the interior

diameter of the first end **65** must be larger by a few millimeters than the outer diameter of the hollow pin-like extension **75**" (Doc. 1, Ex. A, at 10, col. 3, lines 42-45).   The Accused Product does not include a pin-like insert on either end or a hollowed end to insert a pin-like insert on either end, but rather, the Accused Product connects through use of a separate hollowed cylinder-shaped coupler (Doc. 28, at 7; Young Decl., Ex. A, at 2).   As such, the Accused Product does not practice the pin-like insert portion of element (a) of Claim 1 and Claim 3.

**Plaintiffs' Pin-Like Insert:**



FIG 2B

**Accused Product:**



(Doc. 28, at 7).

Further, unlike Plaintiffs' collapsible bait net, the Accused Product does not utilize wax string that wraps around or encircles any portion of the rods, whether as a barrier to movement or otherwise (Doc. 28, at 8-9; Young Decl., Ex. A). The Accused Product is completely devoid of any wax string or similar material, such as waterproof tape, which the '764 Patent references in the specification (Doc. 1, Ex. A, at 10, col. 3, lines 19-22). Accordingly, the Accused Product completely omits and therefore does not practice element (c) of Claim 1 and, therefore, Claim 3, involving the wax string wrapping.

**Plaintiffs' Wax String Wrapped Around Rods:**



FIG 2B

**Accused Product:**



(Doc. 28, at 8-9).

Based on the foregoing, the Accused Product did not directly infringe Claim

1 or, as a result, Claim 3, under a theory of literal infringement.[8]   Likewise, Defendants did not indirectly infringe the '764 Patent under a theory of literal infringement.   "Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement." *Dynacore Holdings Corp.*, 363 F.3d at 1272 (citation omitted). A defendant's liability for indirect infringement must therefore relate to the identified instances of direct infringement. *Id.* at 1274.  Accordingly, to prevail on a theory of indirect infringement, a plaintiff must first show that the defendant's actions led to direct infringement of the patent at issue. *Id.*  As the foregoing illustrates, Defendants did not directly infringe the '764 Patent nor take any actions that led to the direct infringement of the '764 Patent, and, consequently, they did not indirectly infringe the '764 Patent.  Summary judgment thus should be granted as to Plaintiffs' claim of literal infringement, both directly and indirectly.

## 2.      Doctrine of Equivalents

Alternatively, Plaintiffs contend that the Accused Product infringes the '764 Patent under the doctrine of equivalents.  The equitable doctrine evolved from a balancing of competing policies that, on one hand, require claims to be particular and distinct to provide the public fair notice of what the patentee and USPTO agree constitutes the metes and bounds of the claimed invention while, on the other hand,

---

[8] "It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed[.]" *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

seek to prevent the deprivation of the benefits of the patent to the patentee by competitors who appropriate the essence of an invention while barely avoiding the literal language of the claims. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). Given the balancing of these policies, infringement may lie under the doctrine of equivalents "where an infringer, instead of inventing around a patent by making a substantial change, merely makes an insubstantial change, essentially misappropriating or even stealing the patented invention." *Id.* (internal quotation marks and citations omitted).

In essence, under the doctrine of equivalents, infringement may be found where a product or process does not literally infringe a patent claim but where the differences between the claimed invention and the accused product or method are insubstantial or where the product or process "'performs substantially the same function in substantially the same way to obtain the same result.'" *Duncan Parking Techs., Inc.*, 914 F.3d at 1361-62 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608)(1950)) (additional citation omitted); *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007) ("A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method."); *London*, 946 F.2d at 1538 ("The standard for infringement under the doctrine of equivalents has often been articulated:

infringement may be found if an accused device performs substantially the same function in substantially the same way to achieve substantially the same result."). Under the function-way-result inquiry, the court focuses upon an examination of the claim at issue and the explanation of the claim provided in the written description of the patent. *AquaTex Indus., Inc.*, 479 F.3d at 1326. In applying the doctrine of equivalents, the court should conduct an objective inquiry on an element-by-element basis to determine equivalence. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). "An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element." *Id*.

The doctrine of equivalents cannot be used to effectively read out a claim limitation in a patent, however, because the public must be able to rely upon the language of the patent claims. *Duncan Parking Techs., Inc.*, 914 F.3d at 1362 (citations omitted). To conclude otherwise would effectively preclude the claims from serving their intended purpose. *See London*, 946 F.2d at 1538. Importantly, therefore, the doctrine of equivalents applies only as the exception and is not "simply the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims." *Id*.

An infringement theory fails under the doctrine of equivalents if it renders a claim inconsequential or ineffective. *Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 923 (Fed. Cir. 2021). Known as the vitiation doctrine, it ensures

that the application of the doctrine of equivalents does not effectively eliminate a claim element in its entirety. *Id.* (citation and quotation omitted). Namely, "[c]laim vitiation is a legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent." *Id.* (citations and quotation omitted). "[S]aying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013). "'Vitiation' is not an exception or threshold determination that forecloses resort to the doctrine of equivalents, but is instead a legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted." *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371 (Fed. Cir. 2015).

In the end, the determination of equivalence depends "on the proper assessment of the language of the claimed limitation and the substantiality of whatever relevant differences may exist in the accused structure." *Id.* at 1372 (citations omitted). Notably, "the range of equivalents cannot be divorced from the scope of the claims." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000). A district court "may find the absence of an equivalent where no reasonable jury could have found that the accused device has an equivalent to the disclosed structure." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004) (internal quotations omitted).

As noted, infringement under the doctrine of equivalents is a question of fact, but "'[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obligated to grant partial or complete summary judgment.'" *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) (quoting *Warner-Jenkinson*, 520 U.S. at 39 n.8) (alteration in original).  To that end, the patentee must "provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *Advanced Steel Recovery*, 808 F.3d at 1319 (internal quotation and citations omitted).

To survive summary judgment of noninfringement under the doctrine of equivalents, therefore, Plaintiffs needed to present evidence of insubstantiality or of equivalence under *each* prong of the function-way-result test.  *Id.* at 1320 (citation omitted).   "'That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result in a substantially different way.'"  *Id.* at 1321 (quoting *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 n.6 (Fed. Cir. 1987)).  In this instance, Plaintiffs failed to present evidence of insubstantiality or equivalence with respect to the "way" prong of the test.  Primarily, although a reasonable juror might conclude that the elements of the Accused Product perform

substantially the same function to achieve substantially the same result as the elements of the collapsible bait net claimed in the '764 Patent, a reasonable juror could not conclude that the Accused Product does so in substantially the same way or that such differences are insubstantial.  More specifically, even construing the facts in the light most favorable to Plaintiffs, a reasonable juror could not conclude that the Accused Product, which lacks a pin-like insert or wax string wrapping, performs the connection and barrier-to-movement functions *in substantially the same way* to achieve substantially the same result or that the different means for achieving those results are insubstantial.

For example, the connection and lock mechanisms on the two nets differ substantially in the way they connect the two rods.  Plaintiffs argue that the Accused Product essentially inverts the means of the connection and locking mechanisms such that the mechanisms of the Accused Product and of Plaintiffs' collapsible bait net are two sides of the same coin.  Although each of the connection and lock mechanisms perform the same function of securely connecting the rods together with the same result of connecting the first and second ends of the rods to form a ring, the Accused Product does not form a connection or lock in a substantially similar way to the claimed collapsible bait net in the '764 Patent.  The Accused Product uses a separate cylinder coupler with two hollow ends to serve as the insertion point for the solid ends of the tubular rods (Young Decl., ¶¶9-11 & Ex. A). In contrast, the attachment and lock mechanism in the claimed collapsible bait net in the '764 Patent involves a slender component jutting out from one rod that gets

inserted into the hole of a hollow end of the other rod.  Claim 1 explicitly indicates that the two semicircular rods each have a hollow first end and a second end with a pin-like insert attached thereto, with the two semicircular rods connected at each end to form a ring by means of the pin-like insert of the second end inserted into the hollow first end for a secure fit at two points of connection (Doc. 1, Ex. A, at 11, col. 5).  As alluded to above, the specification further illustrates the difference:

> When the metal rods **10** are disconnected, they reveal connection components including a hollow open first end **65** and second end **70** having an indented groove or crease **72** and a hollow pin-like extension **75**.  The hollow pin-like extension **75** has a smaller diameter than the second end **70** from which it extends.  For reconnection, the hollow pin-like extension **75** of the second end **70** is inserted into the hollow open first end **65** and securely fastened by virtue of the dimensions of the components, creating the point of connection **60**.  The metal rods **10**, including the first end **65**, second end **70**, and pin-like extension **75** are hollow and tubular in design.  The dimensions of the metal rods **10**, including the first end **65**, second end **70**, and pin-like extension **75** may vary.  However, a key feature of this design is that the interior diameter of the first end **65** must be larger by a few millimeters than the outer diameter of the hollow pin-like extensions **75**.
>
> In one embodiment the invention, the interior diameter of the first end **65** may be 0.8 mm and the outer diameter of the hollow pin-like extension **75** may be 0.5 mm.  When connected the two components **65** and **75** fit securely without slippage or movement until disconnected by placing a thumb or other digit over the indented groove or crease **72** of the second end **70** and pulling apart.

(Doc. 1, Ex. A, at 10, col. 3, lines 29-52).  Given the construction of Claim 1 and the information contained in the specification of the '764 Patent, the separate cylinder coupler performs the connection and lock function in a substantially different way than the pin-like insert on the claimed collapsible bait net in the '764 Patent.  Such differences are not insubstantial.  For those reasons, a reasonable jury

could not conclude that the Accused Product infringed element (a) of independent Claim 1, or dependent Claim 3, under the doctrine of equivalents.

Plaintiffs' claim under the doctrine of equivalents also fails with respect to the wax string element, element (c) of Claim 1. The claimed collapsible bait net involves a string made of wax encircling the tubular rod at a position and height to prevent movement of the U-shaped cords and the net (Doc. 36, at 12). As indicated, the Accused Product does not contain a wax string that wraps around any portion of the rods, whether to create a barrier to the movement of the net and cords or otherwise (Young Decl., ¶12 & Ex. A). The inquiry could end there, as the Accused Product does not practice that element because the Accused Product simply does not contain wax string or any other similar addition of material that forms a barrier to movement.

Going further, however, Plaintiffs point to photographs provided in conjunction with Dominguez's declaration that purport to show grooves on the Accused Product that Plaintiffs argue provide the same function (keeping the cords and netting from moving too far toward the ends of the rods and sliding off when connected) in substantially the same way (the grooves are located approximately the same distance from the end of their respective rods as the wax string barriers) to achieve the same result (creating a lateral physical barrier to movement of the cords along the rod). Plaintiffs attempt to establish equivalence of the "way" element by arguing:

> The only difference is that, whereas the claimed invention creates a
> lateral physical barrier by wrapping additional material around the rod

to increase the effective diameter, the Accused Product creates a lateral physical barrier by removing material from the rod itself, creating a cavity, such that the bottom portion of the fastening means occupies the cavity and the top portion is raised, effectively increasing the diameter of the rod in comparison, thus acting as a physical barrier itself.

(Doc. 57, at 13).

In response, Defendants argue that the inadmissible and unauthenticated photographs upon which Plaintiffs rely should not be considered, but to the extent the Court considers such photographs, the Court should consider the photographs provided by Defendants, which disclose no such grooves (Doc. 64, at 10). Regardless, even construing the facts in the light most favorable to Plaintiffs and finding that the grooves are present on the Accused Product, the presence of the grooves cuts against Plaintiffs' position, as the claimed collapsible bait net *adds* material to create a barrier while the Accused Product *removes* material, potentially to create a barrier (*see* Doc. 57, at 13). *See Brilliant Instruments*, 707 F.3d at 1347 ("To succeed on a doctrine of equivalents theory, the patentee must demonstrate equivalence under [the well-established function-way-result or insubstantial differences tests]. This will be more difficult when the accused structure has an element that is the opposite of the claimed element, especially where the specification or prosecution history highlights the differences."). Plaintiffs' argument that the specification's reference to waterproof tape as a means of creating a barrier to movement does not further their position (Doc. 1, Ex. A, col. 3, lines 19-22). The waterproof tape would function as an alternate addition of material to the rod rather than removal of material, as allegedly in the Accused product. A

31

reasonable juror therefore could not conclude that grooves cut into the Accused Product's rods perform in the same way as the wax string wrapped around the tubular rod.  Although the function and result may be substantially similar or even the same, the way the Accused Product and the claimed collapsible bait net achieve such results is not.  Since nothing in the record demonstrates that wax string is on the Accused Product, the Accused Product does not practice the wax string element at all, much less performs the substantially same function in substantially the same way to achieve substantially the same result.  Moreover, while grooves may perform the substantially same function and achieve the substantially same results, they do not do so in a substantially similar way.  As with the pin-like insert, such differences are not insubstantial.   Accordingly, Plaintiffs' claim under the doctrine of equivalents also fails with respect to the wax string element for Claim 1 and Claim 3.

In sum, a reasonable juror could not find that each element of the Accused Product and the claimed collapsible bait net in the '764 Patent perform substantially the same function in substantially the same way with substantially the same result or that the way in which they differ is insubstantial.  This application of the function-way-result test and the insubstantial differences test is sufficient to warrant a grant of summary judgment in favor of Defendants, finding noninfringement under the doctrine of equivalents.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted as to infringement under the doctrine of equivalents as well, both directly and indirectly.

### III.   Motion for Sanctions

Defendants additionally seek an award of sanctions against Plaintiffs pursuant to Rule 11.  Under Rule 11, parties must adhere to the following:

> **(b)     Representations to the Court.**  By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > **(1)**     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > **(2)**     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > **(3)**     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > **(4)**     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)-(4) (emphasis in original).  If an attorney or unrepresented party violates Rule 11(b), a court may impose an appropriate sanction on the attorney, law firm, or party that violated the rule or that bears responsibility for the violation. Fed. R. Civ. P. 11(c)(1).  Such sanctions "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant for

part or all of the reasonable attorney's fees and expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).

In this instance, Defendants argue that Plaintiffs' claims for direct and indirect patent infringement were frivolous and without a basis in law or in fact from the outset.  Plaintiffs provided evidence that, prior to initiating this action, they purchased an Accused Product and compared it with the collapsible bait net claimed in the '764 Patent in reaching the conclusion that the Accused Product might infringe the collapsible bait net claimed in the '764 Patent (Dominguez Decl., ¶¶7-8 & Ex. A).  While Plaintiffs' claims ultimately may fail, Plaintiffs maintained an arguable, nonfrivolous claim for patent infringement and demonstrated an effort to engage in pre-suit investigation of such claim.  Further, as explained above, a reasonable juror could conclude that the Accused Product and the collapsible bait net claimed in the '764 Patent perform substantially the same function with substantially the same result but just not as to the way in which each achieves that result, especially in light of the claims construction.  For those reasons, it is recommended that the motion for sanctions be denied.

### IV.   Conclusion

Accordingly, it is hereby

RECOMMENDED:

1.   Defendants' Motion for Summary Judgment (Doc. 28) be granted.

2.   Defendants' Motion for Sanctions (Doc. 19) be denied.

IT IS SO REPORTED in Tampa, Florida, this 9th day of August, 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge


**NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:   Hon. Kathryn Kimball Mizelle
      Counsel of Record